**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL SALONE | : | |
| 8 Holiday Avenue | : | |
| Hatfield, PA 19440 | : | |
| | : | CIVIL ACTION NO. _____ |
| Plaintiff | : | |
| vs. | : | |
| | : | JURY TRIAL DEMANDED |
| THOMAS PUBLISHING | : | |
| 1 Progress Drive | : | |
| Horsham, PA 19044 | : | |
| Defendant | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, Michael Salone ("Plaintiff"), brings this action against Defendant, Thomas Publishing ("Defendant") for violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"). By and through his undersigned counsel, Plaintiff alleges as and for a Complaint that:

## PARTIES

1.      Plaintiff is an adult male individual who currently resides at the above referenced address and at all times relevant was an employee and Account Executive with Defendant.

2.      Defendant, Thomas Publishing, is an entity, corporation, organization and/or limited liability company duly existing under the laws of the state of New York and the United States of America, with a place of regular business at 1 Progress Drive, Horsham, PA 19044, and at all times relevant was Plaintiff s employer.

3.      At all times relevant, Defendant agreed, accepted, adopted, acquiesced to, and were otherwise bound by the actions, omissions, and conduct of their owners, officers, managers, employees, and agents.

1

## JURISDICTION AND VENUE

4.      Plaintiff's claims arise under the FMLA and this Court has Subject Matter Jurisdiction by virtue of a Federal Question, 28 U.S.C.A. § 1331.

5.      This Court has Supplemental Jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper before the United States District Court for the Eastern District of Pennsylvania as Defendant regularly conducts business in the Eastern District of Pennsylvania. Additionally, all actions and omissions giving rise to Plaintiff's claims occurred in Philadelphia County and thus the Eastern District of Pennsylvania.

## FACTS AND BACKGROUND

7.      Plaintiff began working for Defendant Thomas Publishing on or about December 1, 2014 as an Account Executive.

8.      Plaintiff's job responsibilities primarily consisted of selling advertising space on Defendant's online platform, ThomasNet, as well as creating and selling digital marketing packages to Defendant's customers.

9.      Plaintiff was an exemplary employee consistently earning above-average performance reviews, positive reviews from Defendant's customers, and was even promoted to Account Manager on 4/1/2017, at which point Plaintiff assumed higher-level responsibilities and additional customers.

10.     On or about March 24, 2017, Plaintiff was diagnosed with severe obstructive sleep apnea and began working a reduced schedule shortly thereafter.

11.     Specifically, on 4/3/2018 Plaintiff submitted an FMLA request to work a reduced schedule of 4 hours per day from 4/3/2017—5/1/2017, which Defendant approved on 4/10/2017.

2

(Please see attached Exhibit A).

12.    On 5/2/2017, Plaintiff requested an extension of his reduced schedule FMLA

leave (*i.e.*, for his severe sleep apnea) from 5/1/2017—5/22/2017, which Defendant approved on

5/1/2017.

13.    On 5/23/2017 Plaintiff requested a second extension of his reduced schedule

FMLA leave from 5/23/2017—6/19/2017, which Defendant approved on 6/2/2017.

14.    On May 25, 2017, Defendant emailed Plaintiff stating:

Mike,

Thank you for sending me your request to extend your FMLA time on 5/22.
Based on the information provided by your healthcare provider we have
certain additional questions for him.  We need written clarification from
your provider so that we can consider your request and make an informed
decision.  Please submit his explanations no later than Friday June 2nd.

Specifically have your provider submit additional information as to why it
is medically necessary to take this time off to treat your condition.

Secondly, your provider states that you require a reduced work schedule
working ½ days from 8:30-12:30 from 5/23-6/20 (page 2 of the FMLA
request form) yet also states that the frequency of flare-ups is 2 times per
week for 1 full day.  We therefore request that he provide additional
information regarding the medical need for a reduced work schedule of ½
days 5 days a week for a condition that may flare-up 2 times a week for 1
full day.

Again, please submit further details and information no later than Friday
June 2nd.

Let me know if you have any questions,

Thanks, [ ]
Kate Mathisen

15.    Plaintiff replied via email on May 26, 2017 stating in pertinent part:

Kate,
I do have a couple of questions, and I'm certain my physician will also.

3

First, I have to pay for a doctors visit each time I get paperwork filled out. Since you are requesting additional information, is Thomas Publishing covering this expense?

Second, the information provided by my physician was sufficient for two prior FMLA forms. Why is his professional opinion being questioned by HR this
time?

Third, do you need my physician to complete another FMLA form? Write a letter?

                           * * *

Thanks,
Mike

16.    Defendant replied that same day stating in pertinent part:

Mike,

An employer is not required to pay the cost of a doctor visit to obtain this additional information.  An employer can request additional information in order to approve an FMLA request.  Your provider may send us a letter with the information or add the additional information (answering our inquiries) onto the most recent FMLA request.

\*\*\*

Thanks, [ ]
Kate Mathisen.

17.    Defendant's reply misstates the law; in Pennsylvania an employer may not require its employees to bear the cost of examinations for certification/recertification of medical leave. *See* 43 P.S. § 1002.

18.    On May 31, 2017, Plaintiff's treating physician, Robert Davis, wrote to Defendant explaining:

Dear Human Resources,

Michael Salone is under Pulmonary Auspices for obstructive sleep apnea. He is urrently prescribed a CPAP machine that he is using on a regular basis.  He is currently working daily on a part-time basis due to excessive daytime sleepiness.  It is medically necessary for him to continue on a part-time basis due to excessive daytime sleepiness.  The FMLA form requests us to provide you with an estimate of potential flare-ups.  Flare ups can occur daily and without predictability, therefore it is medically necessary for Mr. Salone to continue to work part time due to his obstructive sleep apnea.  My understanding is [he] has a pulmonary/sleep evaluation upcoming shortly.  If you have any further questions, please do not hesitate to contact me at your earliest convenience.

19.    On June 2, 2017, Plaintiff emailed management stating:

Kate,

I am reluctantly sending this via email since your fax was not working earlier on 3 separate attempts. I have been informed by a coworker and 2 additional witnesses that Dan Carr has been asking people on his team

5

about my health and about if they have "Ever seen me fall asleep during a meeting." I am truly vexed that any information about my health would somehow get into Dan Carr's hands and how he feels it is OK to discuss with members of his team. Could you please assure me that this goes no further than you and Ivy.

Thank you.
Mike

20.    Human resources representative Kate Mathisen replied on June 6, 2017 as

follows:

Mike,

I have discussed your concern around confidentiality of medical information at Thomas with Ivy. She has reached out to Rob to remind him and his management team of the following:

-Confidentiality is of the utmost importance when being informed by HR that an FMLA/ADA request has been received/approved
-Managers are not to question employees or others about medical conditions related to FMLA/ADA

Ivy has been assured that management is following FMLA/ADA confidentiality regulations and you can be assured that HR has not shared any medical information with Rob or the other managers.  The FMLA/ADA regulations stipulate that managers and supervisors may be informed about necessary restrictions on the work or duties of an employee as well as about necessary accommodations. For example, currently the management team is aware of your need to work a reduced work schedule.

You should also be aware that per the FMLA/ADA regulations, medical information is confidential. All written documents (including leave requests, medical certifications, emails/faxes pertaining to medical information) are maintained in a separate from the usual personnel file which is only accessible/available to Ivy and myself.

Thanks,

Kate

21.    On 6/7/2017, Plaintiff was presented with a memorandum from Robert Terry—

Plaintiff's direct supervisor and the regional head of sales— dated June 7, 2017 incorrectly

accusing him of inappropriate workplace behavior and insubordination on April 12, June 6, and June 7, 2017, and read it aloud to Plaintiff. (Please see attached Exhibit B).

22.     Mr. Terry's June 7, 2017 memorandum mischaracterizes Plaintiff's workplace behavior through various factual inaccuracies including, *inter alia*:

    a.  The email dated June 7, 2017 and referred to in Mr. Terry's memorandum is short and direct, as electronic communications should be, but is not reasonably susceptible to interpretation as "aggressive and disrespectful";

    b.  Plaintiff did not refuse to sign the document he was presented with on June 6, 2017, but rather sought 24 hours to review it, as it purported to affect the terms and conditions of his employment;

    c.  The other incidents described in Mr. Terry's memorandum, *i.e.*, on April 12, 2017 and June 6, 2017 never actually occurred.

23.     On or about June 16, 2017, Plaintiff's treating physician provided Defendant with a second medical certification in support of a request for medical leave under the FMLA. (Please see attached Exhibit C).

24.     Plaintiff's June 16, 2017 medical certification provided, *inter alia*, that:

    a.  Plaintiff's serious medical condition commenced January 1, 2017 and had a probable duration of 1 year;

    b.  Plaintiff had been admitted for overnight medical care due to his health condition;

    c.  Plaintiff anticipated he would be unavailable for work from 12:30pm— 5:30pm daily between July 20 and August 23, 2017, during which time he would be substantially unable to perform any of his job duties.

25.     On 6/19/2017, Defendant ultimately approved Plaintiff's third request for an extension of his reduced-schedule FMLA leave (*i.e.*, related to his severe sleep apnea) from 6/20/2017—7/20/2017.

26.     By way of response to Defendant's inquiries regarding the medical necessity for Plaintiff's leave, Plaintiff's treating physician provided Defendant with an additional medical certification on 7/16/2017 in support of Plaintiff's FMLA request related to his severe sleep apnea (Please see attached Exhibit D).

27.     Plaintiff's 7/16/2017 medical certification provided, *inter alia,* that:

    a.  Plaintiff's serious medical condition commenced January 1, 2017 and had a probable duration of 1 year;

    b.  Plaintiff had been admitted for overnight medical care due to his health condition;

    c.  Plaintiff anticipated he would be unavailable for work from 12:30pm—5:30pm daily between July 20 and August 23, 2017, during which time he would be substantially unable to perform any of his job duties.

28.     On 7/18/2017, Defendant ultimately approved Plaintiff's fourth request for an extension of his reduced-schedule FMLA leave (*i.e.*, related to his severe sleep apnea) from 7/20/2017—8/23/2017.

29.     On 7/28/2017 Plaintiff submitted another request, this time for full-time FMLA leave based on a different medical condition (specifically, chronic pain) for 7/28/2017—8/29/2017, which Defendant ultimately approved on 8/17/2017.

30.     Due to a painful neck injury that required a surgical spinal fusion, Plaintiff took a leave of absence from July 28, 2017 through November 30, 2017 under Defendant's short-term

disability policy in order to facilitate his treatment and recovery.

31.     On August 10, 2017, Defendant's HR representative (Kate Mathisen) emailed

Plaintiff stating:

> Mike,
>
> We have now received 2 completely different FMLA requests (different providers, conditions, duration of conditions, treatment plans, etc.)
>
> On the form completed by Robert Davis, there is no treatment schedule. We would need clarification on this.
>
> On the form completed by Louis Baldino, again-we have no clarification on the questions we have asked multiple times.
>
> Please advise under which form you are requesting your FMLA? [sic] Typically the same medical provider for your STD request completes the FMLA request (for the same medical condition) and as you are aware, Louis Baldino is the one who completed your STD paperwork.  It is our intention to contact the appropriate provider once we receive confirmation from you.
>
> Once we have received clarification and are able to consider the request we will send you the completed Designation Notice for Family and Medical Leave Request [sic].  Please note that your FMLA eligibility will expire on 8/23/2017.
>
> Thanks,
> Kate

32.     Plaintiff replied in pertinent part on August 11, 2017 stating:

> Kate,
> To clarify once again, please use the paperwork updated by Louis Baldino on August 9th.  This paperwork has been updated to answer questions you needed for consideration.
>
> Paperwork was already sent to Cigna on July 28th, 2017.
> Please inform me how this is insufficient, so we can rectify this situation. Again, you can contact him directly or contact my PCP for additional information.
>
> Lastly, can you please explain what you mean by "your FMLA eligibility will expire on 8/23/2017?"  This seems inconsistent with our employee

handbook.

33.    Defendant emailed Plaintiff on the same day stating:

Mike,

The questions we asked (below) have still not been answered by Louis Baldino. Submitting a form from 2016 and writing "updated 8/9/2017" is not complying with our request. We still need answers to these two questions by 8/18/2017. Once received, it is our intention to speak to him directly.

Under Part A of the FMLA form,

1) #8, your provider has checked off that you are unable to perform job functions. The form then requests the provider to identify the job functions the employee is unable to perform. This was not completed, and we request a response to this question.

2) Your provider states that the course of treatment is weekly therapy; however, the request is for full time absence from the office from 7/28-8/29. Please have the provider explain why the fulltime absence is necessary for weekly therapy.

Under Part B of the FMLA form,

1) #3, your provider states that your condition will not cause flare ups preventing you from performing your job function. However, this appears to conflict with the information provided under #8 referenced above. Please have the provider clarify.

Also you stated in the email on 8/10 that these medical conditions are related. Please have your provider explain to us how they are related.

In regards to your FMLA eligibility, an employee is eligible for up to 12 weeks of FMLA time. This is in the handbook on page 59-63. From 3/28/2017 to 7/27/2017 you have been on intermitted FMLA leave (working ½ day, then having ½ day of FMLA). Starting 7/28-8/29 you were placed on disability. For these days a full FMLA day has been recorded. Therefore by 8/23 you have reached your 12 weeks of eligible FMLA time.

Thank you for helping us get this information clarified,

34.    On 8/14/2017 Plaintiff's treating psychologist, Louis Baldino, wrote to Defendant

10

stating:

> To Ivy Molovsy:
>
> FMLA is updated on 8-14-17.
>
> Mike's condition is related to his primary care provider's treatment because the back pain and lack of mobility has increased the symptoms and anxiety. Mike is on daily treatment w/ meds and is unable to work at this time.
>
> Thank you
> Louis Baldino
>
> (Please see attached Exhibit E)

35.     Plaintiff returned to work as scheduled on November 30, 2017 and was immediately called into a meeting with Rob Terry and Ivy Molovsky, who confronted Plaintiff over a letter from a customer (Please see attached Exhibit F).

36.     Management then informed Plaintiff that it was terminating his employment supposedly because the customer letter amounted to Plaintiff disparaging his employer.

37.     Management's stated reason for terminating Plaintiff's employment is pretextual, as its construction of the customer letter is unsupported by any surrounding circumstances and not worthy of belief by a reasonable person.

## COUNT I:
### *Interference—Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA")*

38.     All prior paragraphs are hereby incorporated by reference and re-alleged as if fully set forth herein.

39.     Defendant Thomas Publishing is an employer engaged in commerce within the meaning of the FMLA as it employs 50 or more employees on each working day in each of 20 calendar weeks in the present or prior calendar year.

40.     The prima facie elements to a claim for interference in violation of the FMLA are

(1) plaintiff is eligible for FMLA, (2) defendant is eligible as an employer under the FMLA, (3) the plaintiff was entitled to FMLA leave, (4) the plaintiff gave notice of his intent to take FMLA leave, and (5) the plaintiff was denied benefits to which he was entitled. *Lombardo v. Air Products and Chemicals, Inc.*, 2006 WL 1892677 *3 (E.D. Pa. July 7, 2006).

41.     The foregoing facts state a claim for FMLA interference because, *inter alia*:

   a.   Plaintiff was eligible for FMLA leave, as he had worked for Defendant since December 1, 2014 in a full-time capacity;

   b.   Defendant was an FMLA eligible employer;

   c.   Plaintiff was entitled to FMLA leave as he duly submitted his healthcare provider's certification documenting Plaintiff's own serious medical condition, which had commenced on or around 1/1/2017, its probable duration of one year, and the other appropriate facts within the healthcare provider's knowledge requiring medical leave; and

   d.   Plaintiff was effectively denied at least four full weeks of FMLA leave, as he did not agree—and was not required—to count concurrently the time he spent on Defendant's short-term disability policy with his FMLA leave. *See also* ¶¶ 26-27.

42.     As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has been deprived economic and non-economic benefits including, but not limited to, back pay, front pay, loss of opportunity for advancement, loss of opportunity for pay raise, painful embarrassment among family, friends, and co-workers, mental anguish,

alienation from society, harm to reputation, and the loss of enjoyment of the ordinary pleasures of life.

43.     Additionally, Plaintiff is entitled to liquidated damages for Defendant Thomas Publishing's violations of the FMLA.

**COUNT II:**
*Retaliation—Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA")*

44.     All prior paragraphs are hereby incorporated by reference and re-alleged as if fully set forth herein.

45.     Defendant Thomas Publishing is an employer engaged in commerce within the meaning of the FMLA as it employs 50 or more employees on each working day in each of 20 calendar weeks in the present or prior calendar year.

46.     A plaintiff may establish a retaliation claim under the FMLA by showing that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 694 F.36 294, 301-02 (3d Cir. 2012).

47.     The foregoing facts establish Plaintiff's claim for FMLA retaliation because, *inter alia*:

        a.   Plaintiff invoked his right to FMLA qualifying leave and duly submitted multiple medical certifications endorsed by his healthcare provider(s);

        b.   Plaintiff suffered an adverse employment action when his employment was terminated; and

        c.   Among other things, the circumstances surrounding Plaintiff's termination permit the reasonable inference that Defendant terminated Plaintiff's employment as an act of retaliation for invoking his right to FMLA qualifying

13

leave because, *inter alia*:

      i.   Plaintiff was terminated on his first day back from FMLA qualifying leave;

      ii.   In light of its' own language and praise for Plaintiff's work, the customer letter received on 10/30/2017 could not have been a bona fide reason for terminating Plaintiff's employment; and

      iii.   While simultaneously insisting on details about Plaintiff's medical condition to which it was not entitled (such as how certain diagnoses were related, how Plaintiff's healthcare provider was interpreting the term 'flare-up' on boilerplate FMLA request forms, and questioning which treatment plans were medically appropriate), Defendant failed to follow-up with Plaintiff's healthcare provider and failed to request a second or third opinion from another healthcare provider at its own expense, as contemplated by FMLA regulations.

48.    As a direct and proximate result of Defendant's retaliation, Plaintiff has been deprived economic and non-economic benefits including, but not limited to, back pay, front pay, loss of opportunity for advancement, loss of opportunity for pay raise, painful embarrassment among family, friends, and co-workers, mental anguish, alienation from society, harm to reputation, and the loss of enjoyment of the ordinary pleasures of life.

49.     Additionally, Plaintiff is entitled to liquidated damages for Defendant Thomas Publishing's violations of the FMLA.

**WHEREFORE,** Plaintiff, Michael Salone, demands relief from Defendant in the form of compensatory damages, liquidated damages, equitable relief, costs of litigation, attorney's fees, and all other relief deemed just and proper by the Court.

Respectfully submitted,

**KRAEMER, MANES & ASSOCIATES LLC**

By:_____
Anthony Giletto, Esquire
PA ID No.: 318080
8 Penn Center
1628 JFK Blvd., Suite 1650
Philadelphia., PA 19103
(215) 475-3516 (p)
*Attorney for Plaintiff, Michael Salone*

Date: <u>April 10 , 2018</u>

## VERIFICATION

I, Michael Salone, hereby certify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief.

_Michael Salone_
Michael Salone

$\underline{4-9-2018}$
Date

# Exhibit A



**Detweiler Family Medicine & Associates**

1970 North Broad Street
Lansdale, PA 19446

T: 215.368.1900
F: 215.368.8777

www.detweilerfamilymedicine.com

Office hours by appointment

Robert O. Detweiler, D.O.
Certified in Family Medicine

Michael E. Parke, D.O.
Certified in Family Medicine

Stephanie D. Shearer, D.O.
Certified in Family Medicine

Samara Martinez, D.O.
Certified in Family Medicine

Ivan Kessler, D.O.
Certified in Family Medicine

Christine M. Sabatino, CRNP
Certified in Adult Health & Gerontology

Robert Davis, CRNP, DC
Certified in Adult Health

Wendy Brian, CRNP
Certified in Adult & Women's Health

Today's Date: <u>3/24/2017</u>

To Whom It May Concern:

Please accept this note as with respect to our patient / your employee, <u>Michael Salone</u>.  He was seen at our office today for medical treatment by  Robert Davis, CRNP.  Here is a summary of the patient's condition and, if required, any medically necessary accommodations.

<u>Brief Description of Medical Condition:</u>

*Uncorrected Sleep Apnea*

<u>Causation of medical condition:</u>

☒ Medical Condition is not work-related

☐ Medical condition is work-related (worker's compensation)

<u>Ability to continue / return to work:</u>

☐ Employee is able to return to work without accomodation

☐ Employee is currently unable to work due to medical condition

Estimated Return to work:

☒ Employee is able to work, but medically requires the following accomodations:

*Due to uncorrected sleep apnea, Micheal requires time to exercise during lunch.*

<u>As a result of this medical condition, has the employee already missed time from work:</u>

☒ Yes - Dates Missed:  *03/24/2017*

☐ No

Please contact our office if you have any questions or require any further information.

Regards,

Robert O Detweiler, DO

# Exhibit B

Introducing...



**For the Best Industrial Search Results...Go Straight to the Source**

To:     Mike Salone
From:   Robert Terry
Date:   6/7/17
Re:     Unprofessional and Inappropriate Behavior

Mike,

The following serves to summarize our conversation today with you and your supervisor Max DiPettusanto, regarding your unprofessional and inappropriate behavior. Over the last several weeks, there have been 4 examples of such behavior that is unacceptable and will not be tolerated.

I began and ended the conversation applauding you on how good a job you have been doing recently bringing in contracts. I reiterated to you my statement from our meeting 4/12/17 that I want nothing but success for you in your role here at ThomasNet. However, I needed to share my concerns regarding your unacceptable behavior.

The first instance was earlier today ( 6/7/17) with respect to the the email you send to Max regarding CAI Restoration Services. This email  was aggressive and disrespectful to Max as your supervisor. It is not your place to dictate what your manager should be doing.  This followed an earlier conversation with Max regarding your refusal to sign a company document, stating that it is an employment agreement. To be clear, it is not an agreement, as Thomas is an at will employer and does not enter into employment agreements with their employees. It is simply a document outlining performance expectations and requirements which all employees are expected to sign.

The third incident occurred, on 6/6/17 during a meeting with your manager  where you discussed several accounts. During that meeting you expressed you were in a bad mood because I had told you to remove your headphones and stated to you that we are in working hours.  While Max was discussing specific accounts with you, you asked him why you were being reprimanded after bringing in several contracts. Max responded that he was not reprimanding you but discussing contracts that had been sold by you. You stated to Max that you got it and that **"You** are not in my cross hairs", then leaned back and looked in the general direction of my office. This language is aggressive, inappropriate, unprofessional and  unacceptable. You stated that you did not lean back looking towards my office but that you were referring to the contract in front of you.

The fourth example was addressed with you previously, on April 12th, 2017 when Ivy Molofsky and I met with you. In addition to other topics , we discussed your statement regarding putting down a "Battle Flag" with HR and I.  At that  time you were told that this language is aggressive, inappropriate, unprofessional and unacceptable.

This serves as a formal warning that any future inappropriate or unprofessional behavior will be subject to further disciplinary action up to and including termination.


Robert Terry
Nat. Director of Sales

# Exhibit C



Thomas Publishing Company, LLC

# Family Medical Leave Request

1. Employee's name: _Michael Salone_

2. Patient's name: _Michael Salone_

3. Employee's job title: _Account Executive_       Department: _Sales_

4. Reason for Requested Leave:

   ☐ Birth of your child, or placement of a child with you for adoption or foster care;

   ☑ Your own serious health condition;

   ☐ Because you are needed to care for your ☐ spouse; ☐ child; ☐ parent due to his/her serious health condition;

   ☐ Because of a qualifying exigency arising out of the fact that your ☐spouse; ☐ son or daughter; ☐ parent is on active duty or call to active duty status in support of a contingency operation as a member of the National Guard or Reserves (Please use the FMLA Qualifying Service Member Request Form.)

   ☐ Because you are the ☐spouse; ☐ son or daughter; ☐parent; ☐ next of kin of a covered service member with a serious injury or illness.

5. If reason is for a family member provide name & relationship to you: _____

6. Date you wish to commence leave: _6/20/17_    7. Anticipated return to work date: _7/20/17_

8. are you requesting leave on an intermittent or reduced schedule?    Yes ☑  No ☐

9. If "yes," please give schedule of when you anticipate you will be unavailable for work.
   _2:30pm - 5:30pm daily_

I understand that under the Family Medical Leave Act (FMLA) I may be eligible for up to 12 weeks of leave per year. If leave is requested for a serious medical condition, it is also my understanding that the Medical Certification form must also be completed to request FMLA leave. Failure to provide a completed Medical Certification Form is grounds for denial of leave. Employees seeking to return to work after a leave because of their own serious illness must also complete the following Return to Work Medical Certification Form (or other qualifying certificate of approval to return to work), before they are allowed to resume work. I understand that if I fail to provide a completed Return to Work Medical Certification Form, I may not be permitted to resume my position with the Company.

If leave is requested for a qualifying exigency arising out of your or a family member's active duty or call to active duty in support of contingency operation as a member of the National Guard or Reserves, a complete and sufficient certification to support a request for FMLA leave must be included. Such documentation may include a copy of a meeting announcement for informational briefings sponsored by the military, a document confirming an appointment with a counselor or school official, or a copy of a bill for services for the handling of legal or financial affairs. Available written documentation supporting this request for leave is attached.

I hereby agree that if I fail to return to work at the end of the leave period, I will reimburse Thomas Publishing for the cost of health benefits provided by Cigna Health Care, during my leave, unless I fail to return to work because of the continuation, recurrence, or onset of a serious health condition or because of other circumstances beyond my control. If I am unable to return to work because of a serious health condition, I will provide medical certification from the appropriate health care provider stating that I am unable to perform the functions of my position on the date that my leave expired or that I am needed to care for a covered relation because s/he has a serious health condition on the date that my leave expired.

Signed _[signature]_       Date _6-16-17_

## To be completed by the HEALTH CARE PROVIDER

Provider's name: __Robert Davis__

Business address: __1970 N. Broad St. Lansdale PA 19446__

Type of practice / Medical specialty: __Family Detweiler Family Medicine__

Telephone: __215-368-1900__        Fax: __215 368-8172__

Patient Name: __Michael Salone__

### PART A: MEDICAL FACTS

1. Approximate date condition commenced: __1|1|17__

   Probable duration of condition: __1year__

2. Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility? No ☐   Yes ☑

   If so, dates of admission: __Sleep study April 2017__

3. Date(s) you treated the patient for condition: __3/24, 4/2, 4/28, 5/31, 6/16__

4. Will the patient need to have treatment visits at least twice per year due to the condition? No ☐  Yes ☑

5. Was medication, other than over-the-counter medication, prescribed? No ☐  Yes ☑

6. Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)? No ☐  Yes ☑

   If so, state the nature of such treatments and expected duration of treatment:

   __Sleep Therapy   Treatment & (xena Possibly longer__

7. Is the medical condition pregnancy? No ☑  Yes ☐

   If so, expected delivery date: _____

   If the list of the employee's essential functions or a job description are not provided, answer these questions based upon the employee's own description of his/her job functions.

8. Is the employee unable to perform any of his/her job functions due to the condition? No ☐  Yes ☑

   If so, identify the job functions the employee is unable to perform:

   __All__

   Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):

   __Dr Severe OSA – due to OSA pt experiences sever day time__
   __Sleepiness And fatigue__

### PART B: If the patient is the employee, please complete Part B.

1. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? No ☑  Yes ☐

   If so, estimate the beginning and ending dates for the period of incapacity: _____

2. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? No ☐  Yes ☑

   If so, are the treatments or reduced number of hours of work medically necessary? No ☐  Yes ☑

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each
   appointment, including any recovery period: _____

   Estimate the part-time or reduced work schedule the employee needs, if any: __4__ hour(s) per day;
   __5__ days per week from __6|20|17__ through __7/20/17__

3. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?
   No ☐ Yes ☑

   Is it medically necessary for the employee to be absent from work during the flare-ups? No ☐  Yes ☑

If so, explain: _OSA may cause excessive daytime sleepiness_

Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency: ___2___ times per ___1___ week(s) month(s) _____
Duration: _____ hours or_____/ day(s) per episode

## Part C: If the patient is NOT the employee please complete Part C.

When answering these questions, keep in mind that your patient's need for care by the employee seeking leave may include assistance with basic medical, hygienic, nutritional, safety or transportation needs, or the provision of physical or psychological care.

1.  Will the patient be incapacitated for a single continuous period of time, including any time for treatment and recovery?
    No ☐  Yes ☐
    Estimate the beginning and ending dates for the period of incapacity: _____

2.  During this time, will the patient need care? No ☐  Yes ☐
    Explain the care needed by the patient and why such care is medically necessary: _____

3.  Will the patient require follow-up treatments, including any time for recovery? No ☐  Yes ☐
    Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:
    _____
    _____

4.  Explain the care needed by the patient, and why such care is medically necessary:
    _____
    _____

5.  Will the patient require care on an intermittent or reduced schedule basis; including any time for recovery? No ☐  Yes ☐
    Estimate the hours the patient needs care on an intermittent basis, if any: _____ hour(s) per day; _____ days per week from _____ through _____
    Explain the care needed by the patient, and why such care is medically necessary:
    _____
    _____

6.  Will the condition cause episodic flare-ups periodically preventing the patient from participating in normal daily activities?
    No ☐  Yes ☐
    Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):
    Frequency: _____ times per _____ week(s) _____ month(s)
    Duration: _____ hours or _____ day(s) per episode
    Does the patient need care during these flare-ups? No ☐  Yes ☐
    Explain the care needed by the patient, and why such care is medically necessary:
    _____
    _____

## ADDITIONAL INFORMATION:

Attach additional sheets as needed. Please include the employee's name on each page and identify the question number with each of your answers.

I certify that the information provided above is correct to the best of my knowledge.

_____          __5/16/17_____
Signature of Health Care Provider          Date

# Exhibit D



Thomas Publishing Company, LLC

# Family Medical Leave Request

1. Employee's name: __Michael Salone__

2. Patient's name: __Same__

3. Employee's job title: __Account Executive__   Department: __Sales__

4. Reason for Requested Leave:

   ☐ Birth of your child, or placement of a child with you for adoption or foster care;

   ☑ Your own serious health condition;

   ☐ Because you are needed to care for your ☐ spouse; ☐ child; ☐ parent due to his/her serious health condition;

   ☐ Because of a qualifying exigency arising out of the fact that your ☐ spouse; ☐ son or daughter; ☐ parent is on active duty or call to active duty status in support of a contingency operation as a member of the National Guard or Reserves (Please use the FMLA Qualifying Service Member Request Form.)

   ☐ Because you are the ☐ spouse; ☐ son or daughter; ☐ parent; ☐ next of kin of a covered service member with a serious injury or illness.

5. If reason is for a family member provide name & relationship to you: _____

6. Date you wish to commence leave: __7/20/17__   7. Anticipated return to work date: __8/23/17__

8. are you requesting leave on an intermittent or reduced schedule?   Yes ☐   No ☐

9. If "yes," please give schedule of when you anticipate you will be unavailable for work.
   __12:30pm - 5:30pm daily__

I understand that under the Family Medical Leave Act (FMLA) I may be eligible for up to 12 weeks of leave per year. If leave is requested for a serious medical condition, it is also my understanding that the Medical Certification form must also be completed to request FMLA leave. Failure to provide a completed Medical Certification Form is grounds for denial of leave. Employees seeking to return to work after a leave because of their own serious illness must also complete the following Return to Work Medical Certification Form (or other qualifying certificate of approval to return to work), before they are allowed to resume work. I understand that if I fail to provide a completed Return to Work Medical Certification Form, I may not be permitted to resume my position with the Company.

If leave is requested for a qualifying exigency arising out of your or a family member's active duty or call to active duty in support of contingency operation as a member of the National Guard or Reserves, a complete and sufficient certification to support a request for FMLA leave must be included. Such documentation may include a copy of a meeting announcement for informational briefings sponsored by the military, a document confirming an appointment with a counselor or school official, or a copy of a bill for services for the handling of legal or financial affairs. Available written documentation supporting this request for leave is attached.

I hereby agree that if I fail to return to work at the end of the leave period, I will reimburse Thomas Publishing for the cost of health benefits provided by Cigna Health Care, during my leave, unless I fail to return to work because of the continuation, recurrence, or onset of a serious health condition or because of other circumstances beyond my control. If I am unable to return to work because of a serious health condition, I will provide medical certification from the appropriate health care provider stating that I am unable to perform the functions of my position on the date that my leave expired or that I am needed to care for a covered relation because s/he has a serious health condition on the date that my leave expired.

Signed _____   Date __7-16-17__

## To be completed by the HEALTH CARE PROVIDER

**Provider's name:** Robert Davis

**Business address:** 1970 N. Broad Street   Lansdale   PA   19446

**Type of practice / Medical specialty:** Detweiler Family Medicine

**Telephone:** 215-368-1900   **Fax:** 215-368-8772

**Patient Name:** Michael Salone

### PART A: MEDICAL FACTS

1. Approximate date condition commenced: 1/1/17

   Probable duration of condition: 1 year

2. Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility? No ☐ Yes ☑

   If so, dates of admission: _____

3. Date(s) you treated the patient for condition: 3/24, 4/2, 4/28, 5/21, 6/16, 7/16

4. Will the patient need to have treatment visits at least twice per year due to the condition? No ☐ Yes ☑

5. Was medication, other than over-the-counter medication, prescribed? No ☐ Yes ☐

6. Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)? No ☐ Yes ☐

   If so, state the nature of such treatments and expected duration of treatment:
   Sleep therapy treatment, 1 year possibly longer

7. Is the medical condition pregnancy? No ☑ Yes ☐

   If so, expected delivery date: _____

   If the list of the employee's essential functions or a job description are not provided, answer these questions based upon the employee's own description of his/her job functions.

8. Is the employee unable to perform any of his/her job functions due to the condition? No ☐ Yes ☑

   If so, identify the job functions the employee is unable to perform:
   All

   Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):
   Severe OSA. Pt continues c excessive daytime Sleepiness / Fatigue

### PART B: If the patient is the employee, please complete Part B.

1. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? No ☑ Yes ☐

   If so, estimate the beginning and ending dates for the period of incapacity: _____

2. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? No ☐ Yes ☑

   If so, are the treatments or the reduced number of hours of work medically necessary? No ☐ Yes ☑

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period: _____

   Estimate the part-time or reduced work schedule the employee needs, if any: 4 hour(s) per day;
   5 days per week from 7/20/17 through 8/23/17

3. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?
   No ☐ Yes ☑

   Is it medically necessary for the employee to be absent from work during the flare-ups? No ☐ Yes ☑

If so, explain: _OSA may cause excessive day time Sleepiness / Fatigue_

Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency: ___2___ times per ___1___ week(s) month(s) _____

Duration: _____ hours or ___1___ day(s) per episode

## Part C: If the patient is NOT the employee please complete Part C.

When answering these questions, keep in mind that your patient's need for care by the employee seeking leave may include assistance with basic medical, hygienic, nutritional, safety or transportation needs, or the provision of physical or psychological care.

1. Will the patient be incapacitated for a single continuous period of time, including any time for treatment and recovery?
   No ☐  Yes ☐
   Estimate the beginning and ending dates for the period of incapacity: _____

2. During this time, will the patient need care? No ☐  Yes ☐
   Explain the care needed by the patient and why such care is medically necessary: _____

3. Will the patient require follow-up treatments, including any time for recovery? No ☐  Yes ☐
   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

   _____
   _____

4. Explain the care needed by the patient, and why such care is medically necessary:

   _____
   _____

5. Will the patient require care on an intermittent or reduced schedule basis; including any time for recovery? No ☐  Yes ☐
   Estimate the hours the patient needs care on an intermittent basis, if any: _____ hour(s) per day; _____ days per week from _____ through _____
   Explain the care needed by the patient, and why such care is medically necessary:

   _____
   _____

6. Will the condition cause episodic flare-ups periodically preventing the patient from participating in normal daily activities?
   No ☐  Yes ☐
   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

   Frequency: _____ times per _____ week(s) _____ month(s)

   Duration: _____ hours or _____ day(s) per episode

   Does the patient need care during these flare-ups? No ☐  Yes ☐

   Explain the care needed by the patient, and why such care is medically necessary:

   _____
   _____

## ADDITIONAL INFORMATION:

Attach additional sheets as needed. Please include the employee's name on each page and identify the question number with each of your answers.

I certify that the information provided above is correct to the best of my knowledge.

_____          ___7/16/17___
Signature of Health Care Provider          Date

# Exhibit E



## Harleysville Psychological Center

LOUIS R. BALDINO
Licensed Psychologist
National Certified Counselor

2681 Burton Road
Harleysville, PA 19438
Telephone & Fax: (215) 256-6177

8-14-17

TO IVY MOLOSKY.

FMLA is updated on 8-14-17.

Mike's condition is related TO his primary care's Provider's Treatment. Because The back pain & lack of mobility has increased The symptoms and anxiety.

Mike is on daily Treatment w/ meds and is unable TO work at This Time.

Thank you

Lou Baldino



Thomas Publishing Company, LLC

## Family Medical Leave Request

1. Employee's name: _ThomasNet / Thomas Publishing_
2. Patient's name: _Michael Salone_
3. Employee's job title: _Sales_    Department: _Sales_
4. Reason for Requested Leave:
   - ☐ Birth of your child, or placement of a child with you for adoption or foster care;
   - ☑ Your own serious health condition;
   - ☐ Because you are needed to care for your ☐ spouse; ☐ child; ☐ parent due to his/her serious health condition;
   - ☐ Because of a qualifying exigency arising out of the fact that your ☐ spouse; ☐ son or daughter; ☐ parent is on active duty or call to active duty status in support of a contingency operation as a member of the National Guard or Reserves (Please use the FMLA Qualifying Service Member Request Form.)
   - ☐ Because you are the ☐ spouse; ☐ son or daughter; ☐ parent; ☐ next of kin of a covered service member with a serious injury or illness.
5. If reason is for a family member provide name & relationship to you: _____
6. Date you wish to commence leave: _7/28/17_   7. Anticipated return to work date: _8/29/17_
8. are you requesting leave on an intermittent or reduced schedule?   Yes ☐   No ☑
9. If "yes," please give schedule of when you anticipate you will be unavailable for work.

_____
_____

I understand that under the Family Medical Leave Act (FMLA) I may be eligible for up to 12 weeks of leave per year. If leave is requested for a serious medical condition, it is also my understanding that the Medical Certification form must also be completed to request FMLA leave. Failure to provide a completed Medical Certification Form is grounds for denial of leave. Employees seeking to return to work after a leave because of their own serious illness must also complete the following Return to Work Medical Certification Form (or other qualifying certificate of approval to return to work), before they are allowed to resume work. I understand that if I fail to provide a completed Return to Work Medical Certification Form, I may not be permitted to resume my position with the Company.

If leave is requested for a qualifying exigency arising out of your or a family member's active duty or call to active duty in support of contingency operation as a member of the National Guard or Reserves, a complete and sufficient certification to support a request for FMLA leave must be included. Such documentation may include a copy of a meeting announcement for informational briefings sponsored by the military, a document confirming an appointment with a counselor or school official, or a copy of a bill for services for the handling of legal or financial affairs. Available written documentation supporting this request for leave is attached.

I hereby agree that if I fail to return to work at the end of the leave period, I will reimburse Thomas Publishing for the cost of health benefits provided by Cigna Health Care, during my leave, unless I fail to return to work because of the continuation, recurrence, or onset of a serious health condition or because of other circumstances beyond my control. If I am unable to return to work because of a serious health condition, I will provide medical certification from the appropriate health care provider stating that I am unable to perform the functions of my position on the date that my leave expired or that I am needed to care for a covered relation because s/he has a serious health condition on the date that my leave expired.

Signed _____    Date _7/28/17_

## To be completed by the HEALTH CARE PROVIDER

Provider's name: _Louis Baldino_

Business address: _2681 Burton Rd. Harleysville PA. 19438_

Type of practice / Medical specialty: _Licensed Psychologist_

Telephone: _215-256-6177_          Fax: _215-256-6177_

Patient Name: _Michael Salone_

## PART A: MEDICAL FACTS

1. Approximate date condition commenced: _6-5-17_
   Probable duration of condition: _60 Days_

2. Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility? No ☑  Yes ☐
   If so, dates of admission: _____

3. Date(s) you treated the patient for condition: _6-5-17, 6-13-17, 6-19-17, 6-26-17, 7-3-17, 7-17-17,_

4. Will the patient need to have treatment visits at least twice per year due to the condition? No ☐ Yes ☑ _7-25-17, 7-26-17_

5. Was medication, other than over-the-counter medication, prescribed? No ☐  Yes ☑ _Paxil_   _7-28-17_

6. Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)? No ☐ Yes ☑
   If so, state the nature of such treatments and expected duration of treatment:
   _Pulminary + sleep Specialist_
   _orthopedic + spine Specialist_

7. Is the medical condition pregnancy? No ☑  Yes ☐
   If so, expected delivery date: _____

   If the list of the employee's essential functions or a job description are not provided, answer these questions based upon the employee's own description of his/her job functions.

8. Is the employee unable to perform any of his/her job functions due to the condition: No ☐  Yes ☑
   If so, identify the job functions the employee is unable to perform: _all Jobs functions_

   Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):
   _Major depression, Anxiety_

## PART B: If the patient is the employee, please complete Part B.

1. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? No ☐  Yes ☑
   If so, estimate the beginning and ending dates for the period of incapacity: _7-28-17 TO 8-29-17_

2. Will the employee need to attend follow-up treatment appointments ~~or work part-time or on a reduced schedule~~ because of the employee's medical condition? No ☐  Yes ☑
   If so, are the treatments or the reduced number of hours of work medically necessary? No ☐  Yes ☑
   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period: _Weekly Therapy_
   Estimate the part-time or reduced work schedule the employee needs, if any: _____ hour(s) per day;
   _____ days per week from _____ through _____

3. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions?
   No ☐  Yes ☑ _Yes_
   Is it medically necessary for the employee to be absent from work during the flare-ups? No ☐  Yes ☐

If so, explain: _____ *Chronic back Pain due To injury* _____

Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

Frequency: ___/___ times per __*day*__ week(s) month(s) _____

Duration: _____ hours or ___/___ day(s) per episode        *N/A*

## Part C: If the patient is NOT the employee please complete Part C.

When answering these questions, keep in mind that your patient's need for care by the employee seeking leave may include assistance with basic medical, hygienic, nutritional, safety or transportation needs, or the provision of physical or psychological care.

1. Will the patient be incapacitated for a single continuous period of time, including any time for treatment and recovery?
   No ☐  Yes ☐
   Estimate the beginning and ending dates for the period of incapacity: _____

2. During this time, will the patient need care? No ☐  Yes ☐
   Explain the care needed by the patient and why such care is medically necessary: _____

3. Will the patient require follow-up treatments, including any time for recovery? No ☐  Yes ☐
   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:
   _____
   _____

4. Explain the care needed by the patient, and why such care is medically necessary:
   _____
   _____

5. Will the patient require care on an intermittent or reduced schedule basis, including any time for recovery? No ☐  Yes ☐
   Estimate the hours the patient needs care on an intermittent basis, if any: _____ hour(s) per day; _____ days per week from _____ through _____
   Explain the care needed by the patient, and why such care is medically necessary:
   _____
   _____

6. Will the condition cause episodic flare-ups periodically preventing the patient from participating in normal daily activities?
   No ☐  Yes ☐
   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):
   Frequency: _____ times per _____ week(s) _____ month(s)
   Duration: _____ hours or _____ day(s) per episode
   Does the patient need care during these flare-ups? No ☐  Yes ☐
   Explain the care needed by the patient, and why such care is medically necessary:
   _____
   _____

## ADDITIONAL INFORMATION:

Attach additional sheets as needed. Please include the employee's name on each page and identify the question number with each of your answers.

I certify that the information provided above is correct to the best of my knowledge.

_____ *Louis Baldino Psychologist* _____        *7-28-17*
Signature of Health Care Provider                         Date

# EXHIBIT F



Xiomaris Sanchez <xs@lawkm.com>

## Fwd: Why i was told I was fired

1 message

**Anthony Giletto** <ag@lawkm.com>
To: Xiomaris Sanchez <xs@lawkm.com>

Thu, Dec 7, 2017 at 4:34 PM

**Anthony Giletto, Esq.**
Litigation Attorney

**KRAEMER, MANES & ASSOCIATES LLC**
(215) 475-3516 Direct
AG@LawKM.com



---------- Forwarded message ----------
From: **Michael Salone** <msalone1124@gmail.com>
Date: Thu, Dec 7, 2017 at 4:20 PM
Subject: Why i was told I was fired
To: ag@lawkm.com

---------- Forwarded message ----------
From: "Scott Rausch" <scott@sitadelindustries.com>
Date: Nov 30, 2017 18:22
Subject: Fwd: Sitadel Industries
To: <msalone1124@gmail.com>
Cc:

Hi Mike:
Sorry I missed your call and the delay on getting the email sent over to you.  Please find the letter below that was sent to
Thomasnet. I am glad to hear you were able to connect with Beau and that your conversation went well.  If there is
anything I can or we can do to be of help please let us know.  Best of luck and take good care!!!

Thank you,
Scott

Scott Rausch
National Sales Manager

O: 866.284.2802
M: 702.802.1564

scott@sitadelindustries.com
www.sitadelindustries.com

SITADEL INDUSTRIES

---------- Forwarded message ----------
From: **Beau Becker** <beau@beckercustomtrailers.com>
Date: Mon, Oct 30, 2017 at 4:32 PM
Subject: Re: Sitadel Industries
To: tsherbine@thomasnet.com, Scott Rausch <scott@sitadelindustries.com>

Travis:

As the owner of Sitadel Industries, I am contacting you in regards to our account with Thomasnet. Scott Rausch, our Director of Sales from Sitadel, provided me with your contact information. I felt an urgent need to reach out to you due to the fact that the people we have last communicated with at Thomasnet have not lived up to their promises; due to these issues (as well as others which will be outlined in the remainder of this email), I request my account with Thomasnet be cancelled immediately and the contract between Sitadel and Thomasnet be terminated today (10/30/2017). I also request Sitadel Industries be removed from your database and directory, as I no longer wish for Sitadel Industries to even be associated with your organization.

As you know, it was previously requested by Sitadel Industries to void the contract we had previously due to Ed and Dan selling Sitadel a premium $12,000 program and guaranteeing this would generate sales for us if we signed up for this. This certainly has not happened. Currently, I am able to track clicks to my website, which not only does not equate to a major increase in sales. This is exemplified by the fact that not one sale has occurred from this service. The ability to register clicks to your account is a basic service which is provided through many other organizations, at a fraction of the cost we paid. Furthermore, since going live with Thomasnet, there has been less than 10 calls/inquiries. As you can see this is poor return on investment. In fact, we already have a database of over 3,000 contracting officers for the federal government; so paying $12,000 to receive a track of hits to our website is ridiculous.

Since the contract and promises made, I have learned Ed and Dan have taken advantage of other companies who also offer custom products (e.g., an art gallery) and used this tactic in order to receive a higher commission--a practice which I find extremely unethical. I know the "Ed & Dan Show" has occurred on numerous occasions and they have had to go through ethical trailing due to their devious actions with other Thomasnet customers. Luckily, Thomasnet has employees like Michael Salone who represents your company in the proper way. Mr. Salone stated he did not feel comfortable how Sitadel was misled by Dan and Ed. Michael informed us that Sitadel should not have been proposed the $12,000 program, as this program is not designed for companies like mine. In place of this higher priced program (which did not deliver), we may have benefitted instead from being enrolled in the $3,000 program, which basically involves a listing in your directory.

The last conversation I was part of with Thomasnet (which included Rob Terry, Dan and Ed), I was promised Thomasnet would do more to make sure that additional opportunities were brought to Sitadel. I was informed by Rob that he would have his representatives contact the federal government agencies who reportedly visited our website via Thomasnet to try to find out if they were considering acquiring mobile specialty solutions. I was told these representatives would then get back to us and provide further information. This certainly did not happen. Rather, the following day I received an email from Ed stating the next step for Sitadel is to reach out to the DoD ourselves to try to find out this information ourselves, removing responsibility and accountability from Thomasnet. This pattern of being promised something which was never delivered continued.

With that being said, I refuse to pay Thomasnet any further, and request immediate verification that my program is canceled, and my name is no longer made available as connected with your organization. Please send the cancellation document for me to sign today. This is a poor example of how a business should be run. I am both disappointed and dismayed with the unethical manner in which you have allowed your employees to conduct business. When mistakes occur, I believe organizations should do their best to right their own wrongs, informing customers of how these issues were handled.

Lastly, Michael Salone should be commended for his honesty and the customer service he has offered. I only hope Thomasnet has more people like Michael employed, as he went above and beyond what was expected and did everything he could to do right by the client. This is how business should be done and I would strongly recommend Michael be rewarded for this.

Thank you,

Beau Becker
President

O: 800.595.7729
M: 608.385.4927

beau@beckercustomtrailers.com
www.beckercustomtrailers.com

*30 YEARS OF EXCELLENCE IN QUALITY, DESIGN & BUILD*



NEVADA  |  WISCONSIN  |  INDIANA

On Fri, Oct 27, 2017 at 9:26 AM, Scott Rausch <scott@sitadelindustries.com> wrote:

Thank you,
Scott

Scott Rausch
National Sales Manager

O: 866.284.2802
M: 702.802.1564

scott@sitadelindustries.com
www.sitadelindustries.com

SITADEL INDUSTRIES

---------- Forwarded message ----------
From: **Travis Sherbine** <tsherbine@thomasnet.com>
Date: Thu, Aug 10, 2017 at 9:33 AM
Subject: Re: Sitadel Industries
To: Scott Rausch <scott@sitadelindustries.com>

Hey Scott,

I'll start by thanking you for reaching out.

I'm truly sorry you are not currently satisfied with ThomasNet as a partner. Let's make sure we fix that!

While I was out earlier this week, it is my understanding that you were contacted by our National Sales Director, Rob Terry. If I am correct AND if you feel satisfied with the outcome of that conversation please let me know.

If not and/or if you'd like to schedule a time to talk with me anyway please let me know as well.

Thanks,
Travis

On Tue, Aug 8, 2017 at 9:57 AM, Scott Rausch <scott@sitadelindustries.com> wrote:
Travis:
Good morning and I hope this finds you doing very well. I wanted to take this opportunity to reach out to you in regards to the service we currently have with Thomasnet.  Sitadel Industries has had various conversations with representatives from Thomasnet expressing our dissatisfaction for the service that is being provided by Thomasnet due to the expected results we were guaranteed.  At the time Sitadel Industries was being solicited by Thomasnet, the (2) sales people (Dan Carr & Ed Carvalho) were selling Thomasnet as service that would increase the amount of sales calls we would receive and more importantly promised the service would increase our sales and profits twofold.  We were told if we sign up and purchase the current $12,000 premium package this should happen very quickly.

This was very misleading as this has not happened and we have not received any return on investment & we are paying a premium for this service that clearly is not increasing sales calls or profits.  Also at the time I was working

with Thomasnet on setting our program up we told Thomasnet we did not want to have any focus on open cargo trailers, enclosed cargo trailers or concession trailers. Yet the (2) sales people we were working with went ahead and still placed us in these categories thus we were paying for these categories for 3-4 months before a different rep at Thomasnet took over our account. This is just another example of how we were taken advantage of and paying for something that has no return on investment.

The owner of Sitadel Industries, Beau Becker and I would like to set up a conference call with you today to discuss in detail. Please let me know if there is a time that will work for you.

Thank you,
Scott

Scott Rausch
National Sales Manager

O: 866.284.2802
M: 702.802.1564

scott@sitadelindustries.com
www.sitadelindustries.com

 SITADEL INDUSTRIES

--

Travis Sherbine
Executive Vice President of Product

ThomasNet.com
Five Penn Plaza
New York, New York
212.629.1517
tsherbine@thomasnet.com
www.ThomasNet.com

ThomasNet leads to business.™